# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **ARLICIA GOSBY** | § | **CIVIL ACTION NO.**  **1:20-cv-00069** |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **APACHE INDUSTRIAL SERVICES, INC.** | § | |
| *Defendant* | § | **JURY DEMAND HEREIN** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **ARLICIA GOSBY**, for her Original Complaint against Defendant, **APACHE INDUSTRIAL SERVICES, INC.** She hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings action pursuant to the Americans with Disabilities Act ("ADA") of 1990, as it appears at 42 U.S.C. § 12101 *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States; and

   b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government.

3. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (Charge No. 460-2019-00512).

4. For all claims investigated by the EEOC, the Charging Party is afforded ninety (90) days from her receipt of the Dismissal and Notice of Suit Rights to commence litigation. The

EEOC issued suit rights on November 26, 2019, which was received by undersigned counsel on December 2, 2019. Plaintiff files this Complaint within the ninety (90) days afforded by law. *See* Exhibit A.

5.   Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Eastern District of Texas, specifically in Beaumont, Texas, making this District the most appropriate for this suit.

## PARTIES

6.   Plaintiff is a citizen of the United States and resides in the city of Lake Charles, Parish of Calcasieu, State of Louisiana.

7.   At all relevant times, Plaintiff was disabled or, alternatively, was regarded as disabled and, as such, is a member of a protected class.

8.   Defendant, **APACHE INDUSTRIAL SERVICES, INC.** (hereinafter "Apache"), is a corporation licensed to conduct and is conducting business in the State of Texas. Its registered office street address is 206 E. 9th St., Ste. 1300, Austin, Texas 78701.

9.   At all times relevant to this suit, Plaintiff worked for Defendant at its facility located in Beaumont, Texas, which is within this judicial district. All claims that form the basis of this complaint arose from Plaintiff's employment at the Beaumont facility.

## FACTUAL ALLEGATIONS

10. Plaintiff initially began her employment with Defendant as a scaffold helper on March 23, 2018.

11. Before Plaintiff was hired, she underwent a physical examination, and she was not permitted to work until nearly two (2) weeks later due to her blood sugars being elevated as a result of her Diabetes.

12. After Plaintiff completed intake paperwork and the physical, both of which indicated to Defendant that she had Diabetes, Defendant, through its agents, employees, or officers, informed Plaintiff that she would be entirely prohibited from completing any job task that required her to be on a ladder or high scaffold.

13. Plaintiff's physician had expressly indicated that, upon Plaintiff taking her prescribed medication and insulin to manage her blood sugar levels, that she was cleared to climb and perform job duties off of the ground.

14. Despite the clearance that Plaintiff received from her physician to perform duties requiring the use of a ladder and/or scaffold, Defendant again delayed Plaintiff's start date by two (2) weeks because it believed that Plaintiff would have problems climbing due to her condition.

15. Plaintiff's start date was pushed back once again due to a paperwork error on Defendant's end, which resulted in paperwork containing inconsistent names for Plaintiff. Defendant informed Plaintiff that the name discrepancy had to be resolved before she could commence work.

16. While Plaintiff was cleared to work, she was only permitted to work on the ground. On at least one (1) occasion, an Apache Supervisor informed Plaintiff that, if she even attempted to climb, that she would be terminated immediately.

17. Plaintiff was placed on a work "hold" until Charles Hutchings, the Site Manager, gave her approval to move out to the field.

18. At the time Plaintiff was placed on a work hold, Defendant was undergoing a reduction-in-force; however, Apache Lead Man, Ronnie Brown, assured Plaintiff that she had nothing to worry about because she had just started with the company.

19. Once Plaintiff was finally cleared to work in the field, she performed duties in her capacity as a scaffold helper for approximately three (3) weeks before ultimately being terminated.

20. On the morning of April 26, 2017, Plaintiff jammed her finger and indicated to Apache Lead Man, Jacob Primeaux, that she wanted to go to the medical tent and have her finger examined. In immediate response, Mr. Primeaux stated, "don't ever go to medical. If you go to medical, you're a liability . . . take it elsewhere. If you go to medical, they'll lay you off."

21. Thereafter, Plaintiff's Foreman, James LNU, reiterated to Plaintiff that it was best for her to shake off the finger pain and to walk away.

22. As instructed by Mr. Primeaux and James LNU, Plaintiff forwent the medical tent in fear that, if she sought medical attention, that she would be perceived as a liability to the company and would be discharged accordingly.

23. Although Plaintiff took her Diabetes pill on April 26, 2018, Plaintiff forgot to take her insulin before she began the workday. Further, while Plaintiff generally had insulin on her person at all times, on April 26, 2018, she could not bring her insulin to the job site, as the insulin had to remain cold and would be rendered ineffective if exposed to the heat of a sunny, hot day.

24. At approximately noon on April 26, 2018, Plaintiff began sweating excessively due to the heat, which caused her blood sugar to drop and caused Plaintiff to become dizzy and nauseous.

25. Plaintiff's co-worker, Takera Hill, witnessed Plaintiff became suddenly and unexpectedly dizzy and ill, at which time she assisted Plaintiff to the on-site medical tent.

26. After Plaintiff received medical attention at the on-site medical tent, Defendant instructed Plaintiff to contact her mother to pick her up from the job site early.

27. Plaintiff worked a 4-10 schedule, and, accordingly, Plaintiff was not scheduled to work from Friday, April 27, 2018 through Sunday, April 29, 2018.

28. On Monday, April 30, 2018, all employees on site were sent home after a half day of work.

29. On Tuesday, May 1, 2018, Plaintiff contacted General Foreman, Bradley Brumley, informing him that she needed the day off to tend to affairs with the Housing Authority. In response, Plaintiff was assured that, upon her presentation of a note to confirm she was tending to housing affairs, her absence would be excused and would be of no cause for concern to the company.

30. As she was instructed, Plaintiff produced the work note on the following day, Wednesday, May 2, 2018.

31. By 2:30 p.m. on Wednesday, May 2, 2018, a female employee approached Plaintiff and instructed her to gather her belongings because Plaintiff was being transferred to the Highway 90 facility.

32. Plaintiff immediately asked why she was being transferred to another facility, to which the female employee replied, "we're transferring you to 90 because there is more work over there and we didn't want to lay you off."

33. Plaintiff got in to the company van with her belongings, at which time she was escorted to the front of the facility.

34. When Plaintiff got out of the van, the female employee handed her an "Employee Separation Form," which indicated that Plaintiff was being laid off due to a purported "Reduction in Force/Layoff."

35. Upon Plaintiff's receipt of the document, she turned to the female employee and stated, "you told me I was being transferred, why does this say I'm being laid off?" In response, the female employee stated, "oh, well there's not enough work here so you're being laid off at this site, but you're being transferred to the Highway 90 site and will work there,"

36. Plaintiff subsequently contacted the Apache office located in Beaumont, Texas, at which time she was informed by an employee named Beth LNU that, contrary to the assertions made to Plaintiff, Plaintiff had been laid off permanently by Defendant.

37. Plaintiff's lay off, which occurred on May 2, 2018, came almost immediately after Plaintiff experienced a diabetic event wherein her blood sugar dropped after she worked in hot weather conditions on or about Thursday, April 26, 2018.

38. Within five (5) calendar days, and only two (2) working days, of Plaintiff being taken to the Apache medical tent, she was discharged from employment.

39. Upon information and belief, Plaintiff had not received any reprimands of any kind while employed by Defendant.

40. Several other individuals were terminated on May 2, 2018; however, they were terminated for cause, rather than as part of a reduction in force. For example, Elizabeth LNU, an individual who called out of work on a consistent basis, was terminated due to excessive absenteeism.

*{Remainder of Page Intentionally Left Blank}*

**FIRST CAUSE OF ACTION:**
**DISABILITY OR "REGARDED AS" DISABILITY DISCRIMINATION IN**
**EMPLOYMENT**
*Pursuant to 42 U.S.C. § 12101 et seq.*

41. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

42. Title I of the ADA prohibits covered employers from discriminating against a qualified individual with a disability because of the disability with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms and conditions, and privileges of employment. 42 U.S.C. § 12112(a).

43. Defendant is an "employer" as defined in 42 U.S.C. § 12111(5)(A). Defendant is engaged in an industry affecting commerce who has 15 or more employees for each working date in each of 20 or more calendar weeks in the current or preceding calendar year.

44. Plaintiff is "disabled" as defined in 42 U.S.C. § 12102(1)(A). At the time of her termination, Plaintiff suffered from a physical impairment: Diabetes.

45. Plaintiff's Diabetes substantially impaired several of Plaintiff's major life activities, including walking, standing, climbing and working. Furthermore, Plaintiff's Diabetes requires Plaintiff to check her blood sugars constantly, face the complications of hypoglycemia and hyperglycemia, and make her more susceptible to infection.

46. In the alternative, and regardless of whether Plaintiff's Diabetes qualifies as a disability, Defendant regarded Plaintiff as disabled on the basis of her Diabetes.

47. Defendant had actual knowledge of Plaintiff's Diabetes. Plaintiff submitted to a physical upon commencement of her employment, at which time she was subjected to workplace limitations on the basis of her Diabetes.

48. At all times relevant to this suit, Plaintiff was qualified for the position of Scaffold Helper, as she was specifically hired for the position by Defendant. As such, with or without reasonable accommodation, Plaintiff can perform the essential functions of the Scaffold Helper position.

49. By overtly terminating Plaintiff after she experienced a Diabetic attack and sought on-site medical treatment, Defendant took overt action against Plaintiff on the basis of her disabling condition or otherwise on the basis of her perceived disabling condition.

50. Wherefore, Plaintiff asks this Honorable Court to find **APACHE INDUSTRIAL SERVICES, INC.** liable for a violation of Title I of the Americans with Disabilities Act of 1990.

---

## PRAYER

---

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Punitive or exemplary damages;

(c) Reasonable attorney's fees, with conditional awards in the event of appeal;

(d) Pre-judgment interest at the highest rate permitted by law;

(e) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(f) Costs, including expert fees;

(g) Reasonable and necessary medical care and expenses in the past and future;

(h)  Mental anguish damages in the past and future;

(i)  Injunctive relief; and

(j)  Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

---

## DEMAND FOR JURY TRIAL

---

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
Attorneys-at-Law
1109 Pithon St.
Tel: (337) 480 - 0101
Fax: (337) 419 - 0507
Email: *James@saa.legal*

**BY:** */s/ James E. Sudduth, III*
**JAMES E. SUDDUTH, III, 24093227**
*Counsel for Plaintiff*